## CLEMENTS v. MacFADDEN PUBLICATIONS, Inc., et al.

District Court, E. D. Texas, Jefferson Division.

May 15, 1939.

Jones & Jones, of Marshall, Tex., and Taylor & Storey, of Longview, Tex., for plaintiff.

Samuels, Foster, Brown & McGee, of Fort Worth, Tex., for defendant.

DAVIDSON, District Judge.

This is a suit for an alleged libel. The defendant attacks service, and consequently the jurisdiction of the court.

Citation was had upon A. Warwick, who was the traveling representative of the defendant in the State of Texas, whose duties were in the nature of calling upon some sixty-two dealers of Texas and in the Southwest. He would check and inspect the display of the magazines. His work was to aid in the greater distribution of the MacFadden publications, to encourage the sale and circulation. He talked with prospect agents about becoming agents, contacted boys about selling the magazines, and made reports to the New York office. Included among the magazines distributed for the defendant was one entitled "True Detective Stories."

In addition to the traveling representative or salesman, there should be considered in connection with the subject of "doing business" in Texas a contract of the MacFadden company with K. T. Martin. Stated in an abbreviated way, it embraced the following:

(1) An agreement between the "Company" and the "Agent."

(2) The Company would ship the publications enumerated (including True Detective Stories.)

(3) and (9) The Agent would accept returns of unsold copies of the Company's magazines, return to be made by Agent sending in full front covers or whole magazines.

(6) Pay the Company on or before the 10th of each month for the magazines.

(8) Title to all publications to be retained by the Company.

(10) Through city-wide weekly check-ups, keep all retailers adequately supplied with Company's magazines. Increase the sales of old retailers and adding new retailers. Cooperate with the Company's plans to increase the sale of its magazines in Agent's territory.

In Philadelphia & R. R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L. Ed. 710, Mr. Justice Brandeis, in his usual interesting and lucid way, states the law applicable to all those cases where the defendant is not present in the state where service is attempted: "A foreign corporation is amenable to process to enforce a personal liability, in absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."

Each case must stand upon facts peculiar to itself. International Harvester Company v. Kentucky, 234 U.S. 579, 34 S. Ct. 944, 58 L.Ed. 1479. Since the facts in each case necessarily differ, there is only a dim line of demarkation between the borderline or marginal cases where the defendant corporation may be said to be present doing business or merely engaged in the sale of merchandise in interstate commerce.

This question has been repeatedly passed upon by courts of last resort in the state and in the nation. In railway cases, Louisville & N. Ry. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711; Green v. Chicago, Burlington & Quincy Railway Company et al., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; and in automobile cases Fawkes v. American Motor Sales Corporation, C.C., 176 F. 1010, McMaster, Inc., v. Chevrolet Motor Company, D.C., 3 F.2d 469; Peebles v. Chrysler Corporation, D. C., 57 F.2d 867.

Is the defendant MacFadden Publications, Inc. present in the State of Texas? If it is only engaged in the shipment of magazines, like automobiles, like shoes, like other articles sold in interstate commerce, then it is not in Texas nor could it be served with process, and defendant is not before the court. An examination of the contract with Martin indicates strongly the presence of the company, directing and supervising, and generally operating and controlling a business enterprise in the

State of Texas. It retained title to the magazines shipped; thus it became a property holder in the State of Texas. Its agent was authorized to:

(a) Receive this property, to destroy it or to re-sell it as waste paper.

(b) Promote the sales.

(c) Secure new dealers.

(d) Secure boy salesmen.

In the International Harvester case, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, supra, such company had evidently made a studied and planned program to avoid legal service in the State of Kentucky: it entered into a written contract with its agents to effect such. While permitting them to make sales in Kentucky and to carry on business, each and every paragraph was breathing with limitations manifestly sought to restrict the power of agency. The contract drawn was not dissimilar to the one now before the court. In that case it was held that the Harvester Company was still doing business in Kentucky.

Likewise, in Board of Trade v. Hammond Elevator Company, 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111, an attempt was deliberately made to restrict the jurisdiction in which the defendant company might be sued, and a contract between the company's salesmen or agents and itself was entered into, seemingly for such purpose, but as in the Harvester case, the Supreme Court held that nevertheless the defendant was present and doing business in the State.

In Real Silk Hosiery Mills v. Philadelphia Knitting Mills Co., 3 Cir., 46 F.2d 25, the defendant had solicitors to go out and make sale of hosiery to be shipped C. O. D. to the buyer. Nevertheless the court held, correctly as we understand the law, that the defendant was there doing business.

Article 2031 of the Revised Statutes of Texas, Vernon's Ann.Civ.St.Tex. art. 2031, provides how service may be had in this state. The various interpretations of this statute do not, however, make the rule materially dissimilar to the prevailing rule in the Federal courts. Referring to this statute, Justice Kennerly of the Southern District of Texas, Harbich v. Hamilton-Brown Shoe Co., D.C., 1 F.Supp. 63, 65, says: "There seems to be no escape from the conclusion that the service on Dan Smith is sufficient under article 2031, Texas Revised Civil Statutes of 1925."

In that case service was had upon a traveling salesman.

Our attention is also directed to Wilson-Moline Buggy Company v. Priebe, 123 Mo.App. 521, 100 S.W. 558, and Milburn Wagon Company v. Commonwealth, 139 Ky. 330, 104 S.W. 323. In the Wilson-Moline Buggy case there was a reservation of title in the property, as in this case, an obligation to pay for the goods disposed of in the course of relations, and an implied obligation of defendants to restore the unsold goods remaining on hand.

It is the opinion of the court in this case that the contract entered into with the Martin News Agency was clearly and easily within the same general realm of the Harvester Company case, the Hammond case, the Real Silk Hosiery case, and other authorities of that type.

Our attention is further directed to Stoke v. Peter Fox Brewing Company, D. C., 22 F.Supp. 892, the opinion being by Judge Atwell of this District. We concur in the correctness of the decision in this case, but we think the facts are wholly dissimilar.

We have also examined the very late opinion rendered April 3, 1939 in the case of Norman T. Whitaker v. MacFadden Publications, Inc., 105 F.2d 44, by the United States Court of Appeals for the District of Columbia. The opinion does not state at any great length the facts. Seemingly they were very similar to those in the present case. Inasmuch as, in our opinion, this case is in conflict with the Hammond case and the Real Silk Hosiery Mills case, we look upon the issue as an unsettled question, and one to be determined in the light of the facts of each case. To carry the present line of holdings to any greater extent than they now exist could easily result in a publication two thousand miles away destroying a man's reputation, whether he be great or small, and requiring him to come to unfriendly territory, perhaps, to effect his vindication in the courts of justice. For this reason and for others it is manifest that the shipment and circulation of printed documents should hardly be grouped and classed with ordinary articles of merchandise.

The motion to quash the service is overruled.